UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| GEORGE FORBUSH,<br><br>　　　　　　　　Plaintiff,<br>　v.<br>CITY OF SPARKS, *et al.*,<br>　　　　　　　　Defendants. | Case No. 3:21-cv-00163-MMD-WGC<br><br>ORDER |

**I.　SUMMARY**

Plaintiff George Forbush, a Sparks Police Department officer, brings this action pursuant to 42 U.S.C. § 1983 against Defendants City of Sparks, Sparks City Manager Neil Krutz, Sparks Assistant City Manager John Martini, and Human Resources Director Mindy Falk. (ECF No. 1.) Before the Court is Defendants' motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6),[1] which asserts that Plaintiff's claims must be arbitrated pursuant to a collective bargaining agreement ("CBA"). (ECF No. 17 ("Motion").) Because the Court finds that it has subject matter jurisdiction over this action and that the CBA does not mandate arbitration of Plaintiff's claims—and as further explained below—the Court will deny the Motion.

**II.　BACKGROUND[2]**

Plaintiff has been an officer with the Sparks Police Department for 19 years. (ECF No. 1 at 2.) As a Sparks Police Department officer, he is a member of the Sparks Police Protective Association ("SPPA"). (ECF No. 17 at 3.) The SPPA and the City are parties to a collectively bargaining agreement ("CBA"), which governs some aspects of Sparks

---

[1] Plaintiff responded (ECF No. 19) and Defendants replied (ECF Nos. 25, 26).

[2] The following facts are adapted from the Complaint (ECF No. 1) unless otherwise indicated.

Police Department officers' employment. (*Id.* at 3-4.) The CBA states, "No post-probationary employee will be disciplined or discharged without just cause," though it does not clarify what "just cause" means. (ECF No. 17-1 at 9.) The CBA also sets forth a grievance procedure "to settle as quickly as possible disputes concerning the interpretation and application of [the CBA]." (*Id.* at 7.)

The events giving rise to Plaintiff's claims occurred in 2020. Plaintiff posted the following comments from his personal Twitter account. (ECF No. 1 at 7-8.) In response to a video depicting several individuals attempting to light an American flag on fire, Plaintiff commented: "I would be a good helper and throw a lot of gasoline in their direction as they held their lighters and they [sic] say oops as I walked away." (*Id.* at 7 ("Post 1").) In response to a video depicting individuals at a Black Lives Matter march breaking the window of a car and beating the driver, Plaintiff commented: "I have six AR-15 rifles. I always thought having an AR-15 or AK-47 pistol was pointless because of lack of shouldering but now I'm going to build a couple AR pistols just for BLM, Antifa or active shooters who cross my path and can't maintain social distancing." (*Id.* at 8 ("Post 2").) In response to a video showing a person masturbating in a park in the City, Plaintiff commented: "Next time put him in some cross-hairs or on a red dot, please." (*Id.* ("Post 3").) In response to a video regarding a police officer who had been convicted of planting evidence, making false statements, and framing defendants, Plaintiff commented: "He made a lot of good cops look bad. It would be ironic if someone planted drugs by cramming them up his ass so they could be found during an intake search when he goes to prison for what he did. That would be the tip of the iceberg on the punishment scale." (*Id.* ("Post 4").)

The City received an anonymous complaint about Post 2 on August 2, 2020. (*Id.* at 9.) The same complainant[3] informed a newspaper in Reno about Plaintiff's posts, and

---

[3]The Court accepts the allegation in the Complaint as true, though notes that because both the complaint to the City and to the Reno newspaper were anonymous, it is unclear whether they were made by the same individual or group.

the newspaper ran a column about the issue of a police officer's right to express opinions on social media. (*Id.*) The column "was widely discussed in the community." (*Id.*)

On August 10, 2020, fourteen people made comments at a City Council meeting regarding Plaintiff's posts. (*Id.*) Nine commenters expressed support for Plaintiff, and four expressed disapproval.[4] (*Id.*) Those who disapproved of Plaintiff's posts stated they did not want the City to employ people who held Plaintiff's political views. (*Id.*)

On August 18, 2020, the City placed Plaintiff on administrative leave. (*Id.* at 11.) On December 1, 2020, the City held a disciplinary hearing and imposed a penalty of one day of suspension without pay for each of the four posts, totaling four days' suspension without pay.[5] (*Id.* at 12.) Plaintiff was disciplined for violating City Administrative Rule 2.040 ("AR 2.040"), which applies to all private, personal, off-duty social media activity and speech. (*Id.* at 14.) AR 2.040 reads in relevant part: "Employees and elected officials should not post discriminatory remarks, harassing statements, and threats of violence or any language that can be viewed as malicious, obscene, threatening or intimidating, toward fellow employees, citizens, or vendors." (*Id.*)

Plaintiff filed a grievance on December 29, 2020, challenging the City's disciplinary action. (ECF No. 17 at 16.)

Plaintiff alleges six claims in the Complaint, which he filed on April 18, 2021. (ECF No. 1 at 16-30.) The first four claims allege that all Defendants violated 42 U.S.C. § 1983 by retaliating against Plaintiff after he exercised his protected right to free speech on a matter of public concern. (*Id.* at 16-26.) The fifth and sixth claims allege that AR 2.040 is an impermissible prior restraint on protected speech. (*Id.* at 26-30.)

**III.   DISCUSSION**

Defendants argue that this matter must be arbitrated because Plaintiff's claims are subject to the CBA and the CBA requires arbitration. (ECF No. 17 at 2.) Defendants assert

---

[4]The Complaint does not state what the fourteenth commenter's views were.

[5]Elsewhere in the Complaint, Plaintiff alleges he was suspended on December 4, 2020. (ECF No. 1 at 7.)

the Court therefore lacks subject matter jurisdiction to hear this matter and must compel arbitration. (*Id.*) Alternatively, Defendants argue, Plaintiff has failed to state a claim upon which relief can be granted because he did not exhaust his administrative remedies before filing this suit in federal court. (*Id.* at 14-15.) Plaintiff argues that his claims are not subject to the CBA and that he was not required to exhaust any administrative remedy before bringing a § 1983 action. (ECF No. 19 at 14-15, 9-14.)

Because the Court must have jurisdiction to decide the motion to compel and motion to dismiss for failure to state a claim, the Court first addresses the Motion as to subject matter jurisdiction. Because the Court finds it has subject-matter jurisdiction, it next addresses the Motion as it relates to arbitration and dismissal for failure to state a claim.

### A. Subject Matter Jurisdiction

Rule 12(b)(1) permits defendants to seek dismissal of a claim or action for lack of subject matter jurisdiction. Federal courts are courts of limited jurisdiction. *See Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 374 (1978). "A federal court is presumed to lack jurisdiction in a particular case unless the contrary affirmatively appears." *Stock West, Inc. v. Confederated Tribes of the Colville Reservation*, 873 F.2d 1221, 1225 (9th Cir. 1989). Although the defendant is the moving party in a motion to dismiss brought under Rule 12(b)(1), the plaintiff is the party invoking the court's jurisdiction. As a result, the plaintiff bears the burden of proving that the case is properly in federal court. *McCauley v. Ford Motor Co.*, 264 F.3d 952, 957 (9th Cir. 2001) (citing *McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 189, (1936)).

The Court has subject matter jurisdiction to hear this matter. Because Plaintiff asserts claims "arising under the Constitution, laws, or treaties of the United States," the Court finds that it does have federal question jurisdiction. 28 U.S.C. § 1331. Defendants' argument that a binding arbitration agreement alters the Court's authority to hear federal statutory claims is unpersuasive. Although the Ninth Circuit has not directly addressed the question, several courts in this Circuit including a district judge in this district have

held that arbitration agreements do not divest a federal district court of subject matter jurisdiction,[6] squarely holding that "enforcement of an arbitration clause is not jurisdictional and thus not properly the subject of a motion to dismiss under Rule 12(b)(1)." *Munger v. Cascade Steel Rolling Mills, Inc.*, 332 F.Supp.3d 1280, 1287 (D. Or. 2018). Even if Defendants' motion to compel arbitration were successful, the existence of a valid arbitration agreement does not affect what types of claim the Court is empowered to hear.[7] Accordingly, the Motion is denied as to Defendants' Rule 12(b)(1) argument.

### B. Motion to Compel Arbitration and Failure to State a Claim

Having established its jurisdiction to consider the matter, the Court turns to whether Plaintiff's claims must be arbitrated. Defendants' argument is twofold. First, Defendants argue that the CBA is a binding and exclusive agreement to arbitrate disciplinary disputes, including the situation giving rise to Plaintiff's Complaint. Second, Defendants assert that Plaintiff failed to exhaust his administrative remedies through the grievance procedure, so he is barred from seeking relief in federal court.

The Court first considers whether the CBA creates a requirement to arbitrate. Because the Court finds the CBA lacks an unmistakable waiver of a federal forum to litigate federal statutory claims, the Court declines to compel arbitration. Consequently, the Court will further deny the Motion for failure to state a claim, as there is no exhaustion prerequisite for Plaintiff's § 1983 claims.

---

[6] *See Ortiz v. SHAC LLC*, Case No. 2:20-cv-00621-GMN-BNW, 2020 WL 9396484, at *2 (D. Nev. Dec. 11, 2020) ("Although the Ninth Circuit has not directly addressed the question at issue, the Court is persuaded by decisions of the Fifth and Eighth Circuits that have held arbitration agreements do not alter federal district courts' subject matter jurisdiction." (citing *City of Benkelman v. Baseline Eng'g Corp.*, 867 F.3d 875 (8th Cir. 2017) and *Ruiz v. Donahoe*, 784 F.3d 247 (5th Cir. 2015)); *see also Dodo Int'l Inc. v. Parker*, Case No. Case No. C20-1116-JCC, 2021 WL 4060402, at *5 (W.D. Wash. Sept. 7, 2021); *Pinkerton Tobacco Co., LP v. The Art Factory AB*, 2:20-cv-01322-SB-MRW, 2021 WL 541441, at *4 (C.D. Cal. Jan. 28, 2021); *Scott-Ortiz v. CBRE Inc.*, 501 F.Supp.3d 717, 729-30 (D. Ariz. 2020); *Munger v. Cascade Steel Rolling Mills, Inc.*, 332 F.Supp.3d 1280, 1286-88 (D. Or. 2018).

[7] Defendants argue their 12(b)(1) argument can likewise be construed as a motion to compel arbitration pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 3 and 4. (ECF No. 17 at 18-22.) The Court will address Defendants' arbitration arguments separately below.

### 1. Motion to Compel Arbitration

Defendants assert that the CBA creates an enforceable agreement to arbitrate Plaintiff's claims. "The [Federal Arbitration Act ("FAA")], 9 U.S.C. § 1 *et seq.*, requires federal district courts to stay judicial proceedings and compel arbitration of claims covered by a written and enforceable arbitration agreement." *Nguyen v Barnes & Noble Inc.*, 763 F.3d 1171 (9th Cir. 2014). "In considering a motion to compel arbitration, [courts] generally decide two gateway issues: (1) whether the parties agreed to arbitrate and (2) 'whether the agreement covers the dispute' at issue." *Brice v. Haynes Investments, LLC*, 13 F.4th 823, 827 (9th Cir. 2021) (citation omitted). While "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration," *Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 24-25 (1983), "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit," *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648 (1986) (quoting *United Steelworkers of Am. v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 582 (1960)). "The party seeking to compel arbitration 'bears the burden of proving the existence of a valid arbitration agreement by [a] preponderance of the evidence.'" *Mwithiga v. Uber Techs., Inc.*, 376 F. Supp. 3d 1052 (quoting *Bridge Fund Capital Corp. v. Fastbucks Franchise Corp.*, 622 F.3d 996, 1005 (9th Cir. 2010)).

The Court considers first whether a valid agreement to arbitrate exists. The CBA states the parties "shall have the opportunity" to pursue the grievance procedure outlined in Article K of the CBA, but may instead elect to follow "the procedures outline in the Sparks Civil Service Rules and Regulations." (ECF No. 17-1 at 7.) "A grievance filed under Section 1, Article K or an appeal filed under the Sparks Civil Service Rules waives the other appeal procedure." (*Id.* at 9.) If the grievant chooses to use Article K's grievance procedure, the procedure permits filing a grievance with the Police Chief, appealing any undesirable result with the City Manager, and ultimately submitting the matter to arbitration if it is not resolved. (*Id.* at 8.) Apart from arbitration being the final step in the elective Article K grievance procedure, there is no other arbitration provision in the CBA.

Although the Court agrees that this is a disciplinary matter and some claims arising from it may be subject to arbitration, Defendants have failed to show there was an agreement to arbitrate Plaintiff's § 1983 claims. The Ninth Circuit recently reiterated that an exception exists to "the general rule in favor of compelling arbitration in labor disputes . . . for claims based on federal statutes that contain specific substantive guarantees for workers." *Columbia Export Terminal, LLC v. Int'l Longshore and Warehouse Union*, 2 F.4th 1243, 1254 (9th Cir. 2021). One such statute is 42 U.S.C. § 1983. *See 14 Penn Plaza LLC v. Pyett*, 556 U.S. 247, 263 ("[B]ecause an arbitrator's authority derives solely from the contract . . . an arbitrator may not have the authority to enforce § 1983' when that provision is left unaddressed by the arbitration agreement.") (quoting *McDonald v. West Branch*, 466 U.S. 284 (1984)). When a union bargains to waive its members' federal statutory claims, that waiver must be "clear and unmistakable." *See Wright v. Universal Maritime Serv. Corp.*, 525 U.S. 70, 80 (1998). Moreover, because "the right to a federal judicial forum is of sufficient importance to be protected against less-than-explicit union waiver in a CBA," any waiver must be "explicitly stated." *See id.* at 258 (quoting *Wright*, 525 U.S. at 80).

The CBA does not explicitly waive the right to pursue federal statutory claims in a judicial forum. While the Court acknowledges that an arbitrator may hear federal claims—including constitutional claims—as a matter of contractual agreement, Defendants have failed to show that the CBA includes an "explicitly stated," "clear and unmistakable" waiver of judicial forum. *See 14 Penn Plaza*, 556 U.S. at 257-58. The provisions in Articles H and N, which Defendants rely on to show that SPPA intended to waive a judicial forum for federal statutory claims, are anything but explicit. (ECF Nos. 25 at 8; 17-1 at 6, 9.) Article H sets forth the CBA's Non-Discrimination policy, agreeing that all employees in the SPPA negotiating unit will be treated without discrimination and neither the City nor the SPPA will interfere with represented employees' right to equal representation by the SPPA. (ECF No. 17-1 at 6.) Article H does not mention the grievance procedure or arbitration, reading instead as a general commitment to equal treatment. (*Id.*) Similarly,

7

Article N states only that post-probationary employees will not be disciplined or discharged without "just cause." (*Id.* at 9.) While Article N has one line explaining the two grievance procedures are mutually exclusive, there is no reference to arbitration or the waiver of a judicial forum for adjudicating represented employees' constitutional rights. (*Id.*)

The Court is unpersuaded by Defendants' argument that it must read these disparate provisions together and infer a waiver of judicial forum for federal statutory claims. While the Court understands *14 Penn Plaza* to permit an arbitrator to hear federal statutory and constitutional claims, that decision did not upset the holding in *Wright* which required the judicial forum waiver to be explicit. Just as a court in this district found that a CBA which lacked an express judicial forum waiver could not be used to compel a plaintiff to arbitrate his § 1983 claims, the CBA here similarly lacks clear assent. *Accord Sifre v. City of Reno*, Case No. 3:14-cv-00060-RCJ-WGC, 2014 WL 4232570 (D. Nev. Aug. 26, 2014) (reasoning that when a CBA lacked a clear and unmistakable forum waiver, plaintiff police officer was not required to arbitrate § 1983 claims). Accordingly, the Court will deny the Motion as to the request to compel because Plaintiff's claims are not subject to mandatory arbitration under the CBA.

### 2. Failure to State a Claim

Separate from their argument that Plaintiff is bound to arbitrate his claims under the CBA, Defendants assert that the grievance procedure is a necessary prerequisite to bringing suit in federal court. (ECF No. 17 at 16.) Defendants therefore move to dismiss the Complaint because Plaintiff failed to exhaust his administrative remedies before bringing suit. (*Id.* at 14.) Plaintiff counters there is no exhaustion requirement for a § 1983 claim when the claimant is not subject to the Prison Litigation Reform Act. (ECF No. 19 at 11.)

"Ordinarily, plaintiffs pursuing civil rights claims under 42 U.S.C. § 1983 need not exhaust administrative remedies before filing suit in court." *Porter v. Nussle*, 534 U.S. 516, 523 (2002). Moreover, as explained above, the CBA did not expressly waive

8

Plaintiff's right to bring federal statutory claims in federal court. Because Plaintiff need not complete the grievance process before seeking redress in court, the Court agrees with Plaintiff and will deny the Motion as to Defendants' 12(b)(6) argument.

**IV.   CONCLUSION**

The Court notes that the parties made several arguments and cited to several cases not discussed above. The Court has reviewed these arguments and cases and determines that they do not warrant discussion as they do not affect the outcome of the issues before the Court.

It is therefore ordered that Defendants' motion to dismiss (ECF No. 17) is denied.

DATED THIS 21st Day of December 2021.

MIRANDA M. DU
CHIEF UNITED STATES DISTRICT JUDGE