CALEB E. MASON (pro hac vice) (CA Bar No. 246653)
WERKSMAN JACKSON& QUINN, LLP
888 West Sixth Street, Fourth Floor
Los Angeles, California 90017
cmason@werksmanjackson.com
(213) 688-0460

MARK A. KILBURN (Nevada Bar No. 1702)
Law Offices of Mark Kilburn
327 S. Arlington Ave., Reno, NV 89501
kilburnlaw@sbcglobal.net
(775) 329-1735
*Attorneys for Plaintiff Officer George Forbush*

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| OFFICER GEORGE FORBUSH, <br><br> Plaintiff, <br><br> vs. <br><br> CITY OF SPARKS, NEVADA; CITY MANAGER NEIL KRUTZ, in his individual and official capacities; ASSISTANT CITY MANAGER JOHN MARTINI, in his individual and official capacities; HUMAN RESOURCES DIRECTOR MINDY FALK, in her individual and official capacities; DOES 1-10, <br><br> Defendants. | Case No.: 3:21-cv-0163-MMD <br><br> **FIRST AMENDED COMPLAINT:** <br><br> **1. Retaliation for Exercise of First Amendment Rights, in Violation of 42 U.S.C. § 1983** <br> **2. Retaliation for Exercise of First Amendment Rights, in Violation of 42 U.S.C. § 1983** <br> **3. Retaliation for Exercise of First Amendment Rights, in Violation of 42 U.S.C. § 1983** <br> **4. Retaliation for Exercise of First Amendment Rights, in Violation of 42 U.S.C. § 1983** <br> **5. Retaliation for Exercise of First Amendment Rights, in Violation of 42 U.S.C. § 1983** <br> **6. Prior Restraint, in Violation of the First Amendment and 42 U.S.C. § 1983** <br> **7. Injunctive Relief** <br> **DEMAND FOR JURY TRIAL** |

1

Plaintiff George Forbush ("OFFICER FORBUSH"), an individual and Sparks Police Department officer, alleges as follows:

### JURISDICTION AND VENUE

1.  OFFICER FORBUSH brings this suit under the United States Constitution and 42 U.S.C. § 1983.  This Court has jurisdiction under 28 U.S.C. §§ 1331 and 1343.

2.  The acts alleged herein occurred in the District of Nevada.  Venue lies in the United States District Court for the District of Nevada, pursuant to 28 U.S.C. § 1391.

3.  The case should be heard in the Reno Courthouse of this Court, because the transactions and occurrences at issue herein took place in Washoe County, Nevada.

### PARTIES

4.  OFFICER FORBUSH was, until January 3, 2022, s an officer in the Sparks Police Department ("Department").  He was employed by the Department for over twenty years.  He is, and at all times relevant hereto was, a resident of Washoe County, Nevada. He exercised his First Amendment rights in Washoe County, Nevada, and he suffered the present and future damages at issue in this case in Washoe County, Nevada, within this judicial district.

5.  Defendant CITY OF SPARKS ("CITY") is a municipality organized under the Constitution and laws of the State of Nevada.  It is located in this judicial district, in Washoe County, Nevada.

6.  Defendant Neil Krutz ("MR. KRUTZ"), an individual, is the CITY's City Manager.  He is the final policymaker for the City with respect to the transactions and occurrences at issue herein, and is vested with the power and authority to

make, approve, and execute CITY policies and practices with respect to personnel and disciplinary matters.  He initiated, participated in, and ratified the transactions and occurrences at issue herein, acting under color of law and exercising state power.  He is sued herein in both his individual and official capacities.

7.  Defendant John Martini ("MR. MARTINI"), an individual, is the CITY's Assistant City Manager.  He initiated, participated in, and ratified the transactions and occurrences at issue herein, acting under color of law and exercising state power.  He is sued herein in both his individual and official capacities.

8.  Defendant Mindy Falk ("MS. FALK") was at all relevant times the CITY's Human Resources director.  She initiated, participated in, and ratified the transactions and occurrences at issue herein, acting under color of law and exercising state power.  She is sued herein in both her individual and official capacities.

9.  The actions, decisions, and/or failures to act at issue herein, taken by DEFENDANTS, were committed within the purpose and scope of the DEFENDANTS' official agency and/or employment relationships with one another, such that the CITY is legally responsible for all such acts and omissions.

10. OFFICER FORBUSH does not know the true names and capacities of DOES 1 through 10, inclusive, and thus sues said Defendants by fictitious names. OFFICER FORBUSH will identify the true names and capacities of DOES 1 through 10, inclusive, if and when they are ascertained. OFFICER FORBUSH is informed, believes, and thereon alleges that each of the fictitiously named Defendants is in some manner legally responsible for the occurrences alleged herein.

11. OFFICER FORBUSH is informed and believes and alleges thereon that Defendants, and each of them, at all times mentioned herein, were the agents,

employees, servants, and/or co-conspirators of the remaining Defendants. OFFICER FORBUSH is informed and believes, and thereon alleges, that Defendants, and each of them, were the actual and/or ostensible agents of the remaining Defendants and were acting within the course and scope of said agency. Defendants shall be specified individually herein or referred to collectively as "Defendants."

## FACTUAL BACKGROUND

12.   OFFICER FORBUSH is a good cop.  He started with the Sparks Police Department in 2001, and before that worked for the Humboldt County Sheriff's Department since 1994.  On the Sparks Police Department, he performed a variety of important behind-the-scenes work, such as managing the Department's fleet of vehicles, coordinating the storage and disposal of abandoned vehicles, managing the automated license plate reader program, and managing the Department's surplus military equipment program.  In addition, he is a highly trained bomb disposal technician, and serves on the Department's bomb squad and on regional bomb squads.

13. He has devoted himself to serving the people of Nevada for the past 26 years.  He is devoted to his job and to the community he protects. And he is now being disciplined not for anything having to do with his professional performance as a police officer, but rather for "misconduct" that consists of expressing his opinions, as a private citizen, while off-duty, on his personal social media accounts, about matters of public concern.  That is not right, and it is not constitutional.  DEFENDANTS disciplined OFFICER FORBUSH because of the particular viewpoint of his political opinions as expressed on his personal social media.  A public employee's off-duty social speech as a private citizen on matters of public concern should not subject him to official employment discipline under

our Constitution. The discipline imposed here on OFFICER FORBUSH violates the Constitution. A public employer may not discipline or retaliate against its employees for the content of their political speech as private citizens on matters of public concern.

14. That rule has been the law for decades. Yet DEFENDANTS punished OFFICER FORBUSH for political comments on matters of public concern that are squarely within the mainstream of American political discourse and commentary.

15. OFFICER FORBUSH has devoted his career to protecting and serving the people of Sparks. He is politically aware and engaged, and proud to be a participant in American democracy. He believes deeply in the values of civic discourse and debate, and he believes all Americans can and should freely express their opinions on matters of public concern.

## OFFICER FORBUSH'S SOCIAL MEDIA ACCOUNTS

16. In 2017, OFFICER FORBUSH created a Twitter account ("Twitter Account") on which he discussed numerous topics relating to current events, politics, and social issues. He posted his content on the Twitter Account from his home, while off duty. At no time did the Twitter Account or any of OFFICER FORBUSH's statements thereon ever purport to be official statements by the Department or statements in OFFICER FORBUSH's capacity as an Department officer. OFFICER FORBUSH's statements on the account were always and entirely his personal views, opinions, and comments, in his capacity as a private citizen, on matters of public concern. He describes himself solely as a "Fourth-Generation Nevadan." His speech on the Twitter Account had no connection to his official duties, which did not include making public statements on social media or elsewhere. He wrote and published his posts on his own time, and with his own

resources.  He never spoke or claimed to speak on behalf of or as a representative of the Department or any governmental agency.

17.  Rather, he spoke as a citizen and a human being, one whose right to speak publicly on matters of public concern is fully protected by the First Amendment. OFFICER FORBUSH has the same rights to engage in speech as anyone else; and he is not required to hide his identity or his job when he does so.

18. OFFICER FORBUSH did not relinquish his right to think, care, and speak about politics and current events when he accepted a job as a police officer.  The CITY has infringed on his First Amendment rights by officially disciplining him for his off-duty speech as a private citizen on matters of public concern.  Our Constitution forbids public entities from punishing their employees for private speech on matters of public concern.  OFFICER FORBUSH loves his job, his city, and his Department.  But he can no longer sit quietly while he is punished by the Department for his exercise of his First Amendment rights.

**The CITY Fails to Implement a Clear, Consistent, and Constitutional Policy on Officers' Personal Social Media Use**

19.  The CITY does not have a clear, consistent, and Constitutional policy regarding officers' personal social media use.

20.  The officer investigating the complaint against OFFICER FORBUSH noted in his report that the key terms in the policy were undefined, so he had to resort to looking at dictionary definitions to try to make sense of terms such as "obscene" and "malicious." The officer even had to look up the word "should."  Having looked it up, the officer concluded the following: "doing anything that you should not do is directly against what you are normally obligated to do." The Constitution requires more specificity than this when municipalities are regulating the private, off-duty political speech of their employees.

21. Because the CITY does not have a clear and specific social media policy for officers, officers like OFFICER FORBUSH are vulnerable to arbitrary, capricious, and viewpoint-motivated disciplinary actions, such as those undertaken by DEFENDANTS in this case.

22. The CITY's disciplinary investigation confirmed that OFFICER FORBUSH made all the Twitter posts while off-duty, on his own time, as a private citizen, and that nowhere in the posts or on his Twitter feed did he identify himself as a Sparks police officer or ever claim to be speaking on behalf of the Sparks Police Department or any governmental agency.

23. Moreover, the CITY's disciplinary investigation confirmed that the posts expressed OFFICER FORBUSH's "steadfast political beliefs and were not associated to the Sparks Police Department in any way."

24. The decision to use the disciplinary process to discipline, deter, punish, and chill officers' speech based on its political viewpoint was a deliberate choice made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question.

25. After reading through more than 700 of OFFICER FORBUSH's Twitter posts, the CITY ultimately disciplined him for four of them. Those four posts are set forth below.

**OFFICER FORBUSH's Posts**

26. On or about December 4, 2020, the CITY suspended OFFICER FORBUSH without pay for four days, one day each for each of the four following posts:

27. **<u>Post No. 1</u>**. The first post was made by OFFICER FORBUSH in response to a video he saw on another Twitter user's feed that showed several protesters gathered around an American flag, attempting to light it on fire. They were holding lighters against the flag, but the flag was fire-resistant and would not burn.

FIRST AMENDED COMPLAINT

The protesters expressed frustration at their inability to burn the flag.  OFFICER FORBUSH, after watching the video, commented in response: "I would be a good helper and throw a lot of gasoline in their direction as they held their lighters and they say oops as I walked away."

28. **Post No. 2**.  The second post was made by OFFICER FORBUSH in response to a video he saw on another Twitter user's feed that showed protesters at a Black Lives Matter march breaking the window of a car, dragging the driver out, and beating him severely.  OFFICER FORBUSH was outraged at the violence, and posted in response: "I have six AR-15 rifles.  I always thought having an AR-15 or AK-47 pistol was pointless because of a lack of shouldering but now I'm going to build a couple AR pistols just for BLM, Antifa or active shooters who cross my path and can't maintain social distancing."

29.  As a matter of law, the use of force, including deadly force, to defend oneself in the circumstances shown in the video to which OFFICER FORBUSH was responding, would be legal.

30. **Post No. 3**.  The third post was made by OFFICER FORBUSH in response to a video he saw on another Twitter user's feed that showed a person masturbating in a CITY park.  OFFICER FORBUSH posted in response: "Next time put him in some cross-hairs or on a red dot, please."

31. **Post No. 4**.  The fourth post was made by OFFICER FORBUSH in response to a story posted by another Twitter user about a police officer who had been convicted of planting evidence, making false statements, and framing defendants.  OFFICER FORBUSH was outraged at that officer's betrayal of his duty and his oath, and posted in response: "He made a lot of good cops look bad. It would be ironic if someone planted drugs by cramming them up his ass so they

FIRST AMENDED COMPLAINT

could be found during an intake search when he goes to prison for what he did. That would be the tip of the iceberg on the punishment scale."

### The City Receives A Complaint About Post No. 2

32. On or about August 2, 2020, the CITY received an anonymous internet message regarding OFFICER FORBUSH's Post No. 2, above.  Based on the CITY's disclosures, the CITY does not know who the complainant was, and there is no evidence or allegation that the complainant had ever met or interacted with OFFICER FORBUSH, or even lived, worked, had ever visited Sparks, or even could find Sparks on a map. The complainant was instead someone who was simply scouring internet posts looking for commenters who expressed so-called "right-wing" views, and then trying to "dox" those commenters by attempting identify commenters who were police officers, and then make complaints to their departments. That is exactly what the complainant did.  Since OFFICER FORBUSH used his real name, George Forbush, on his posts, the commenter searched public-employee databases learned that OFFICER FORBUSH was a police officer, and then made complaints about his political opinions to the CITY and a newspaper in Reno.  A columnist for the newspaper then wrote a column about one of the posts, and the issue of a police officer's right to express opinions on social media on his own time, while off-duty, was widely discussed in the community.

33. On August 10, 2020, fourteen people made comments at a Sparks City Council meeting regarding OFFICER FORBUSH's posts.  Of those fourteen, *nine* of them stated that they *supported* OFFICER FORBUSH.  Those commenters stated, inter alia, that they knew OFFICER FORBUSH, that they had multiple experiences of his helping them diligently and professionally, and that we all as Americans have a First Amendment right to express our political views as citizens

on our off-duty time; and that OFFICER FORBUSH is a good officer who does his job well and fairly and has a positive impact on the community.  Four commenters stated that they did not approve of OFFICER FORBUSH's Tweets; *none* of those commenters made any reference to his performance of his duties; *all* of them said simply that they didn't want the CITY to employ people who hold OFFICER FORBUSH's political views (which, as noted, are mainstream views held by millions of people, including a majority of the citizens of Sparks).  The final commenter did not say anything about OFFICER FORBUSH.  The meeting was recorded and posted on the internet.

34. OFFICER FORBUSH's political views are mainstream and widely shared in Sparks, in Nevada, and in the United States as a whole.

35.  In the United States, people should not be fired for their political views. Public agencies should not fire people for their political views.

36.  In the United States, when callers to a city council meeting demand that a police officer be fired for his political views, the city leaders ought to respond, "Sorry, we don't do that in this country," and the matter should end there.

37. OFFICER FORBUSH's social media posts did not have any adverse impact on the ability of the DEPARTMENT or OFFICER FORBUSH to perform law-enforcement duties.  As noted, anonymous internet complainant and the four individuals who spoke against OFFICER FORBUSH at the City Council meeting simply said they did not like OFFICER FORBUSH's political views.  And as noted, nine of fourteen (64%) commenters strongly supported OFFICER FORBUSH, and all the commenters with actual experience of OFFICER FORBUSH's performance of his duties praised his diligence and professionalism. At no point in this entire process did anyone ever suggest that OFFICER FORBUSH's political opinions had had any effect on his professional performance

of his duties.  Literally the only impact on the Department was that fact that four individuals who had never met or interacted with OFFICER FORBUSH did not like OFFICER FORBUSH's political opinions.

38. On August 18, 2020, the CITY placed OFFICER FORBUSH on administrative leave.

39. The issue of OFFICER FORBUSH's social media posts continued to be politically fraught in Sparks during the fall of 2020 because there was a City Council election, and members of and candidates for City Council positions expressed public stances on OFFICER FORBUSH's posts.  The majority of candidates stated that police officers have First Amendment rights to express themselves while off-duty, as citizens, on matters of public concern.

40.  As noted, the complaints articulated by members of the public were specifically directed to the political viewpoint of OFFICER FORBUSH's posts. The issues raised therein are issues of great public importance, were the subject of widespread public discussion around the time of the posts, and continue to be widely discussed in public discourse.  The Constitution guarantees OFFICER FORBUSH the right to speak about that issue as a private citizen, free of restraint, discipline, or retaliation by his public employer.  It has long been clearly established law that the expression of political viewpoints on matters of public concern enjoys the highest level of protection of any speech under our Constitution, and that viewpoint discrimination by public entities is virtually never justifiable.

41.  Despite this clearly established law, in the months following the August 10, 2020 City Council meeting, City Manager KRUTZ, Assistant City Manager MARTINI, and Human Resources Director FALK decided, intended to, and did, punish, discipline, and otherwise impose adverse employment actions on

OFFICER FORBUSH because of the political viewpoint of his social media statements. DEFENDANTS knew that the Constitution provides everyone, even public employees, the right to freedom of speech and thought in their personal off-duty social media speech as a citizen on matters of public concern.  But DEFENDANTS did not like the political viewpoint of OFFICER FORBUSH's speech, and decided to punish him for it using their official positions, authority, and color of state law. DEFENDANTS initiated the CITY's disciplinary processes against OFFICER FORBUSH.  OFFICER FORBUSH defended himself, asserting his constitutional right to speak while off-duty as a private citizen on matters of public concern on his private social media account.

42. The investigating officer expressly found and agreed that OFFICER FORBUSH made all the posts while off-duty, on his own personal time, and never identified himself as, or claimed to speak on behalf of, any police department or government agency.

43. On or about December 1, 2020, the CITY held a disciplinary hearing, and imposed a penalty of one day of suspension without pay for each of the four posts, for a total of four days' suspension.

**OFFICER FORBUSH Files this Lawsuit, and DEFENDANTS Retaliate Further by Eliminating His Job and Forcing Him to Retire Early with a Lower Pension**

44. OFFICER FORBUSH filed his Complaint in this action on April 8, 2021. DEFENDANTS continued to retaliate against him thereafter for his First Amendment-protected speech as set forth above, and for his First Amendment-protected (and Seventh Amendment-protected) act of filing this lawsuit and petitioning the Court for redress of his grievances.

45. Defendants' additional retaliation consisted of eliminating OFFICER FORBUSH's position entirely, and then constructively discharging him by giving him the "choice" of either retiring early, or returning to a patrol position, which DEFENDANTS knew OFFICER FORBUSH could not do because of chronic knee problems.

46. As noted above, OFFICER FORBUSH's position involved multiple behind-the-scenes duties, including managing the Department's fleet of vehicles, coordinating the storage and disposal of abandoned vehicles, managing the automated license plate reader program, managing the Department's surplus military equipment program, and serving as a bomb disposal technician on the Department's bomb squad and regional bomb squads.

47. On or about September 22, 2021, the CITY's Human Resources Department, which was run by Defendant FALK, the Human Resources Director, posted a job announcement for OFFICER FORBUSH's position, as a civilian (unsworn) position. OFFICER FORBUSH's supervisors in the Department, including Deputy Chief Edmonson, explained to OFFICER FORBUSH that the CITY was eliminating the position entirely as a sworn police officer position, and that OFFICER FORBUSH's choices were to retire early or return to a patrol position.

48. The CITY knew that OFFICER FORBUSH had chronic knee problems that would prevent him from being able to accept the patrol duty. The "choice" was thus a constructive discharge, forcing him to retire early.

49. OFFICER FORBUSH told his supervisors, including Deputy Chief Edmonson and Chief Crawforth, that his position and day-to-day activities included many tasks that had to be performed by a sworn police officer, and could not be "civilianized," and that eliminating the position would lead to inefficiencies

and logistical and management difficulties for the Department.  Deputy Chief
Edmonson and Chief Crawforth agreed that it would be cumbersome, but
explained that they had no choice, because the decision to eliminate OFFICER
FORBUSH's position had been made by the CITY already, specifically including
DEFENDANT FALK.

50. The CITY's actions demonstrate beyond cavil that the CITY has no
possible claim that OFFICER FORBUSH could not be trusted to interact with the
public, because the CITY's express offer to OFFICER FORBUSH was to return to
patrol, where he would be interacting with the public every day.

51. However, because OFFICER FORBUSH's knee problems prevented him
from performing a patrol assignment, he was forced instead to retire early.  January
3, 2022 was his last day.

52. But for DEFENDANTS' retaliation, OFFICER FORBUSH would have
kept working through August 2023, and retired on or about September 1, 2023.

53. Because he was forced to retire 18 months before he otherwise would have,
his pension amount is significantly lower that it would have been.  Because he was
forced to retire early, his pension is calculated as 70% of his prior salary.  If he had
continued to work as he had planned to do through August 2023, his pension
would have been calculated as 75% of his prior salary.

54. Additionally, during the 18-month period from January 2022 through
August 2023, OFFICER FORBUSH would have been earning his full salary.

55. The differential for that 18-month period, and the 5% difference in his
pension calculation for the rest of his life, result in significant economic harms to
OFFICER FORBUSH, in an amount according to proof at trial.

**OFFICER FORBUSH Is Harmed by DEFENDANTS' Wrongful Actions**

56.  OFFICER FORBUSH was harmed, continues to be harmed, and will be harmed in the future by the DEFENDANTS' wrongful actions.

57.  First, as noted above, OFFICER FORBUSH was forced to retire 18 months before he would have absent DEFENDANTS' retaliation.  This forced early retirement caused his pension percentage to be 70%, rather than 75%, of his prior salary.  And it also caused him to lose 18 months of salary.  In other words, for the 18 months between January 2022 and September 2023, Mr. Forbush received 70% of his salary amount as a pension rather than 100% as a salary; and for this rest of his life, Mr. Forbush will receive a pension set at 70% of his salary amount rather than 75% of his salary amount.

58. Second, OFFICER FORBUSH is harmed psychologically, reputationally, and emotionally by being targeted by DEFENDANTS and formally disciplined by the CITY for expressing his views on matters of public concern in his speech as a private citizen on his personal social media accounts.  He was hounded out of a profession he'd devoted his entire life to, simply because he participated on his own time as a citizen in public discourse on matters of public concern—because DEFENDANTS and the CITY didn't like the viewpoints he expressed and thought it would be politically expedient to get him "out."

59.  Third, OFFICER FORBUSH experienced the additional psychological and emotional harms of having his future speech chilled and deterred through the CITY's wrongful prior restraint of his off-duty speech as a citizen on matters of public concern.  OFFICER FORBUSH experienced this unconstitutional prior restraint for his final year as a CITY employee from the time the discipline was imposed on him, until January 2022.  He was afraid to continue to participate in public discourse as a citizen, and so he ceased doing so in fear of further retaliation

by DEFENDANTS.  No American should be forced to give up participation in public discourse for fear of losing his or her job.

60.  Fourth, OFFICER FORBUSH's post-retirement employment prospects with multiple private-sector and public-sector potential employers will be significantly impaired with his personnel record marred by these wrongful impositions of discipline. The loss of these opportunities harms OFFICER FORBUSH in an amount subject to proof at trial.

61. The total amount of OFFICER FORBUSH's damages are subject to proof at trial.

62.  OFFICER FORBUSH was harmed by the CITY's failure to promulgate a clear, consistent, and constitutional social media policy.  The climate of uncertainty, and arbitrary enforcement targeting political viewpoints, chilled the exercise of the constitutional rights of speech and political participation of all CITY personnel.  That chilling effect harmed OFFICER FORBUSH, by deterring him from exercising his right to participate freely in public discussion of matters of public concern—a right that is of immense importance in a democracy. OFFICER FORBUSH was deprived of that right during the entirety of his remaining time in the Department, because he ceased his participation as a citizen in political because he fears retaliation by the CITY on the basis of his personal First Amendment-protected speech as a citizen on matters of public concern.

63.  DEFENDANTS and each of them participated in and ratified the disciplinary proceedings against OFFICER FORBUSH.

64. The ratification and personal participation by City Manager KRUTZ, Assistant City Manager MARTINI, and Human Resources Director FALK in the CITY's conduct as set forth herein—deliberately targeting officers' off-duty speech for discipline and punishment based on its political viewpoint—is

oppressive conduct, because it was done in a manner which injures or damages or otherwise violates the rights of another person with unnecessary harshness or severity and by misuse or abuse of authority.  It is therefore sufficient to support an award of punitive damages in this action.  *Dang v. Cross*, 422 F.3d 800, 809 (9th Cir. 2005).

65. The CITY punished OFFICER FORBUSH under City Administrative Rule 2.040 (Social Media), which the CITY applies to all private, personal, off-duty social media activity and speech, and which reads in relevant part as follows: "Employees and elected officials should not post discriminatory remarks, harassing statements, and threats of violence or any language that can be viewed as malicious, obscene, threatening or intimidating toward fellow employees, citizens, or vendors."

66. The CITY, in disciplining OFFICER FORBUSH, applied the term "should" in Rule 2.040 to mean "shall," and to create a mandatory prohibition against the speech covered by Rule 2.040; and interpreted and that the term "can be viewed" means that an employee can be subject to discipline based on any other person's opinion that a particular statement was "malicious, obscene, threatening or intimidating," or even the possibility that any other person might view a particular statement as "malicious, obscene, threatening, or intimidating."

67. The language of Rule 2.040, both on its face, and in the CITY's interpretation and application of it to OFFICER FORBUSH, is unconstitutionally vague, ambiguous, and overbroad.  It permits the CITY to punish employees, such as OFFICER FORBUSH, for statements they make off-duty, in their capacity as private citizens, speaking on matters of public concern, and which are the subject of widespread public discussion and debate—solely because some CITY official,

such as MARTINI, FALK, or KRUTZ, decides that someone *might* consider the private, off-duty statement to be "malicious, obscene, threatening, or intimidating."

68.  Worse, the rule has no clear definition for the terms "malicious, obscene, threatening, or intimidating," let alone one that is constitutionally compliant and that is noticed to employees.

69.  Worse still, the rule makes no distinction between speech that could reasonably be expected to disrupt the Department's operations, and speech that would not.

70.  All of the above deficiencies render Rule 2.040 unconstitutional under clearly established law, for example *Moonin v. Tice*, 868 F.3d 853 (9th Cir. 2017).

71.  Rule 2.040 is not only unconstitutional in its application to OFFICER FORBUSH's disciplinary proceedings as set forth herein; it is also an unconstitutional prior restraint on OFFICER FORBUSH and every other officer in the DEPARTMENT (and indeed every other employee and official of the CITY), because OFFICER FORBUSH's case is a warning broadcast to all CITY employees that they had better not say anything—anywhere, in any forum, even in their personal social media discussions of matters of public concern—that triggers online "outrage" from an anonymous internet commenter.

72. The CITY is sending a loud and clear signal of prior restraint to its employees.  It may as well post signs that read: "You'd better not engage in social media debates on anything, even important matters of public policy and national concern, because if anyone out there on the internet decides that something you said was 'malicious' or 'intimidating,' we'll target you for official discipline and adverse employment consequences.  What sorts of statements constitute 'malicious' or 'intimidating,' you ask?  You'll find out when we discipline you."  Such a policy on public-employee speech is not permissible in the United States.

73.  The CITY's signal was received.  All the officers in the Department know what happened to OFFICER FORBUSH, and know that the CITY targeted him for discipline because of his personal social media posts made on his own time, as a private citizen, on matters of public concern and widespread public debate. The CITY has chilled and continues to chill the present and future participation in constitutionally protected off-duty speech by other Department officers and CITY employees, because they fear that the CITY will do to them what it did to OFFICER FORBUSH.

## CLAIMS FOR RELIEF

### First Claim For Relief
### Retaliation Based on Exercise of Right to Free Speech in Violation of 42 U.S.C. § 1983 ("Post No. 1")
### (Against All Defendants)

74.  OFFICER FORBUSH re-alleges and incorporates by reference as if fully set forth herein all preceding paragraphs of this Complaint.

75.  OFFICER FORBUSH engaged in constitutionally protected activity when he spoke as a private citizen on matters of public concern, on his personal social media account, in posting Post No. 1.

76.  As a result of his constitutionally protected activity, OFFICER FORBUSH was subjected to adverse action by DEFENDANTS under color of state law that would chill a person of ordinary firmness from continuing to engage in that protected activity, when DEFENDANTS charged him with misconduct and imposed official discipline on him.

77.  There was a substantial causal relationship between the constitutionally protected activity and the adverse action taken against OFFICER FORBUSH by DEFENDANTS, because DEFENDANTS directly and expressly punished him for his constitutionally protected activity.

78.  DEFENDANTS developed and maintained policies and customs that violated OFFICER FORBUSH's constitutional rights.  DEFENDANTS ratified, endorsed, and abetted the retaliatory decisions and actions, and the basis for them. DEFENDANTS knew of, ratified, and failed to stop, the imposition of discipline against OFFICER FORBUSH for exercising his First Amendment rights.

79.  As a direct result of OFFICER FORBUSH's exercising his constitutional right to speak publicly—on his own time, off-duty, as a citizen—publicly on matters of public concern, DEFENDANTS retaliated against him, including, inter alia, taking adverse employment actions against him, by disciplining him for the content and/or viewpoint of his speech. Absent OFFICER FORBUSH's exercising his constitutionally protected rights to speak, DEFENDANTS would not have taken the adverse employment actions against him set forth herein.

80.  At all times mentioned herein, OFFICER FORBUSH's constitutionally protected activities were related to matters of public concern, and were not undertaken pursuant to job duties. OFFICER FORBUSH's speech was on matters of widely-debated public concern.

81.  By taking adverse employment actions against OFFICER FORBUSH that were substantially motivated by his constitutionally protected speech, DEFENDANTS violated OFFICER FORBUSH's rights under the First Amendment to the United State Constitution.

82.  DEFENDANTS' official custom, pattern and practice of retaliating against police officers for the content and viewpoint of their off-duty, private-citizen speech on matters of public concern, has a continued chilling effect upon OFFICER FORBUSH's speech activities and those of many of his fellow officers. DEFENDANTS' adverse employment actions were intended to, did, and would reasonably chill and deter OFFICER FORBUSH, other officers, and other City

employees from speaking publicly, on their own time, on matters of public concern, out of fear that if they expressed certain political views or opinions as citizens, they may be punished as City employees.

83.  As a direct result of DEFENDANTS' acts and omissions, OFFICER FORBUSH has suffered significant damages in an amount subject to proof at trial, including psychological and emotional harms; reputational harms; lost promotional opportunities and associated lost wages and pension income; and lost future income from post-retirement private-sector employment opportunities that will be unavailable to him because he now has an adverse disciplinary record with the Department.

84.  As a direct, foreseeable, and proximate result of DEFENDANTS' acts and omissions, OFFICER FORBUSH suffered and continues to suffer mental and emotional distress, humiliation, anxiety, embarrassment, and discomfort, to his damage, in an amount according to proof at the time of trial, and expenses incurred for treatment of same.

85. In performing the acts herein alleged, DEFENDANTS acted intentionally to injure OFFICER FORBUSH, namely, to discipline him and adversely affect his employment, because of the content and viewpoint of his constitutionally protected speech on matters of public concern, which he engaged in while off duty, as a citizen.

86. DEFENDANTS' conduct was oppressive, despicable and performed with a willful, conscious, and reckless disregard of OFFICER FORBUSH's civil rights such that punitive or exemplary damages are warranted.

**Second Claim For Relief**
**Retaliation Based on Exercise of Right to Free Speech in Violation of 42 U.S.C. § 1983 ("Post No. 2")**
**(Against All Defendants)**

FIRST AMENDED COMPLAINT

87.  OFFICER FORBUSH re-alleges and incorporates by reference as if fully set forth herein all preceding paragraphs of this Complaint.

88.  OFFICER FORBUSH engaged in constitutionally protected activity when he spoke as a private citizen on matters of public concern, on his personal social media account, in posting Post No. 2.

89.  As a result of his constitutionally protected activity, OFFICER FORBUSH was subjected to adverse action by DEFENDANTS under color of state law that would chill a person of ordinary firmness from continuing to engage in that protected activity, when DEFENDANTS charged him with misconduct and imposed official discipline on him.

90.  There was a substantial causal relationship between the constitutionally protected activity and the adverse action taken against OFFICER FORBUSH by DEFENDANTS, because DEFENDANTS directly and expressly punished him for his constitutionally protected activity.

91.  DEFENDANTS developed and maintained policies and customs that violated OFFICER FORBUSH's constitutional rights.  DEFENDANTS ratified, endorsed, and abetted the retaliatory decisions and actions, and the basis for them. DEFENDANTS knew of, ratified, and failed to stop, the imposition of discipline against OFFICER FORBUSH for exercising his First Amendment rights.

92.  As a direct result of OFFICER FORBUSH's exercising his constitutional right to speak publicly—on his own time, off-duty, as a citizen—publicly on matters of public concern, DEFENDANTS retaliated against him, including, inter alia, taking adverse employment actions against him, by disciplining him for the content and/or viewpoint of his speech. Absent OFFICER FORBUSH's exercising his constitutionally protected rights to speak, DEFENDANTS would not have taken the adverse employment actions against him set forth herein.

93.  At all times mentioned herein, OFFICER FORBUSH's constitutionally protected activities were related to matters of public concern, and were not undertaken pursuant to job duties. OFFICER FORBUSH's speech was on matters of widely-debated public concern.

94.  By taking adverse employment actions against OFFICER FORBUSH that were substantially motivated by his constitutionally protected speech, DEFENDANTS violated OFFICER FORBUSH's rights under the First Amendment to the United State Constitution.

95.  DEFENDANTS' official custom, pattern and practice of retaliating against police officers for the content and viewpoint of their off-duty, private-citizen speech on matters of public concern, has a continued chilling effect upon OFFICER FORBUSH's speech activities and those of many of his fellow officers. DEFENDANTS' adverse employment actions were intended to, did, and would reasonably chill and deter OFFICER FORBUSH, other officers, and other City employees from speaking publicly, on their own time, on matters of public concern, out of fear that if they expressed certain political views or opinions as citizens, they may be punished as City employees.

96.  As a direct result of DEFENDANTS' acts and omissions, OFFICER FORBUSH has suffered significant damages in an amount subject to proof at trial, including psychological and emotional harms; reputational harms; lost promotional opportunities and associated lost wages and pension income; and lost future income from post-retirement private-sector employment opportunities that will be unavailable to him because he now has an adverse disciplinary record with the Department.

97.  As a direct, foreseeable, and proximate result of DEFENDANTS' acts and omissions, OFFICER FORBUSH suffered and continues to suffer mental and

emotional distress, humiliation, anxiety, embarrassment, and discomfort, to his damage, in an amount according to proof at the time of trial, and expenses incurred for treatment of same.

98. In performing the acts herein alleged, DEFENDANTS acted intentionally to injure OFFICER FORBUSH, namely, to discipline him and adversely affect his employment, because of the content and viewpoint of his constitutionally protected speech on matters of public concern, which he engaged in while off duty, as a citizen.

99. DEFENDANTS' conduct was oppressive, despicable and performed with a willful, conscious, and reckless disregard of OFFICER FORBUSH's civil rights such that punitive or exemplary damages are warranted.

**Third Claim For Relief**
**Retaliation Based on Exercise of Right to Free Speech in Violation of 42 U.S.C. § 1983 ("Post No. 3")**
**(Against All Defendants)**

100.     OFFICER FORBUSH re-alleges and incorporates by reference as if fully set forth herein all preceding paragraphs of this Complaint.

101.     OFFICER FORBUSH engaged in constitutionally protected activity when he spoke as a private citizen on matters of public concern, on his personal social media account, in posting Post No. 3.

102.     As a result of his constitutionally protected activity, OFFICER FORBUSH was subjected to adverse action by DEFENDANTS under color of state law that would chill a person of ordinary firmness from continuing to engage in that protected activity, when DEFENDANTS charged him with misconduct and imposed official discipline on him.

103.     There was a substantial causal relationship between the constitutionally protected activity and the adverse action taken against OFFICER

FORBUSH by DEFENDANTS, because DEFENDANTS directly and expressly punished him for his constitutionally protected activity.

104.      DEFENDANTS developed and maintained policies and customs that violated OFFICER FORBUSH's constitutional rights.  DEFENDANTS ratified, endorsed, and abetted the retaliatory decisions and actions, and the basis for them. DEFENDANTS knew of, ratified, and failed to stop, the imposition of discipline against OFFICER FORBUSH for exercising his First Amendment rights.

105.      As a direct result of OFFICER FORBUSH's exercising his constitutional right to speak publicly—on his own time, off-duty, as a citizen— publicly on matters of public concern, DEFENDANTS retaliated against him, including, inter alia, taking adverse employment actions against him, by disciplining him for the content and/or viewpoint of his speech. Absent OFFICER FORBUSH's exercising his constitutionally protected rights to speak, DEFENDANTS would not have taken the adverse employment actions against him set forth herein.

106.      At all times mentioned herein, OFFICER FORBUSH's constitutionally protected activities were related to matters of public concern, and were not undertaken pursuant to job duties. OFFICER FORBUSH's speech was on matters of widely-debated public concern.

107.      By taking adverse employment actions against OFFICER FORBUSH that were substantially motivated by his constitutionally protected speech, DEFENDANTS violated OFFICER FORBUSH's rights under the First Amendment to the United State Constitution.

108.      DEFENDANTS' official custom, pattern and practice of retaliating against police officers for the content and viewpoint of their off-duty, private-citizen speech on matters of public concern, has a continued chilling effect upon

OFFICER FORBUSH's speech activities and those of many of his fellow officers. DEFENDANTS' adverse employment actions were intended to, did, and would reasonably chill and deter OFFICER FORBUSH, other officers, and other City employees from speaking publicly, on their own time, on matters of public concern, out of fear that if they expressed certain political views or opinions as citizens, they may be punished as City employees.

109.     As a direct result of DEFENDANTS' acts and omissions, OFFICER FORBUSH has suffered significant damages in an amount subject to proof at trial, including psychological and emotional harms; reputational harms; lost promotional opportunities and associated lost wages and pension income; and lost future income from post-retirement private-sector employment opportunities that will be unavailable to him because he now has an adverse disciplinary record with the Department.

110.     As a direct, foreseeable, and proximate result of DEFENDANTS' acts and omissions, OFFICER FORBUSH suffered and continues to suffer mental and emotional distress, humiliation, anxiety, embarrassment, and discomfort, to his damage, in an amount according to proof at the time of trial, and expenses incurred for treatment of same.

111.     In performing the acts herein alleged, DEFENDANTS acted intentionally to injure OFFICER FORBUSH, namely, to discipline him and adversely affect his employment, because of the content and viewpoint of his constitutionally protected speech on matters of public concern, which he engaged in while off duty, as a citizen.

112.     DEFENDANTS' conduct was oppressive, despicable and performed with a willful, conscious, and reckless disregard of OFFICER FORBUSH's civil rights such that punitive or exemplary damages are warranted.

### Fourth Claim For Relief
### Retaliation Based on Exercise of Right to Free Speech in Violation of 42 U.S.C. § 1983 ("Post No. 4")
### (Against All Defendants)

113.     OFFICER FORBUSH re-alleges and incorporates by reference as if fully set forth herein all preceding paragraphs of this Complaint.

114.     OFFICER FORBUSH engaged in constitutionally protected activity when he spoke as a private citizen on matters of public concern, on his personal social media account, in posting Post No. 4.

115.     As a result of his constitutionally protected activity, OFFICER FORBUSH was subjected to adverse action by DEFENDANTS under color of state law that would chill a person of ordinary firmness from continuing to engage in that protected activity, when DEFENDANTS charged him with misconduct and imposed official discipline on him.

116.     There was a substantial causal relationship between the constitutionally protected activity and the adverse action taken against OFFICER FORBUSH by DEFENDANTS, because DEFENDANTS directly and expressly punished him for his constitutionally protected activity.

117.     DEFENDANTS developed and maintained policies and customs that violated OFFICER FORBUSH's constitutional rights.  DEFENDANTS ratified, endorsed, and abetted the retaliatory decisions and actions, and the basis for them. DEFENDANTS knew of, ratified, and failed to stop, the imposition of discipline against OFFICER FORBUSH for exercising his First Amendment rights.

118.     As a direct result of OFFICER FORBUSH's exercising his constitutional right to speak publicly—on his own time, off-duty, as a citizen—publicly on matters of public concern, DEFENDANTS retaliated against him, including, inter alia, taking adverse employment actions against him, by

disciplining him for the content and/or viewpoint of his speech. Absent OFFICER

FORBUSH's exercising his constitutionally protected rights to speak,

DEFENDANTS would not have taken the adverse employment actions against him

set forth herein.

119.     At all times mentioned herein, OFFICER FORBUSH's

constitutionally protected activities were related to matters of public concern, and

were not undertaken pursuant to job duties. OFFICER FORBUSH's speech was on

matters of widely-debated public concern.

120.     By taking adverse employment actions against OFFICER

FORBUSH that were substantially motivated by his constitutionally protected

speech, DEFENDANTS violated OFFICER FORBUSH's rights under the First

Amendment to the United State Constitution.

121.     DEFENDANTS' official custom, pattern and practice of retaliating

against police officers for the content and viewpoint of their off-duty, private-

citizen speech on matters of public concern, has a continued chilling effect upon

OFFICER FORBUSH's speech activities and those of many of his fellow officers.

DEFENDANTS' adverse employment actions were intended to, did, and would

reasonably chill and deter OFFICER FORBUSH, other officers, and other City

employees from speaking publicly, on their own time, on matters of public

concern, out of fear that if they expressed certain political views or opinions as

citizens, they may be punished as City employees.

122.     As a direct result of DEFENDANTS' acts and omissions, OFFICER

FORBUSH has suffered significant damages in an amount subject to proof at trial,

including psychological and emotional harms; reputational harms; lost promotional

opportunities and associated lost wages and pension income; and lost future

income from post-retirement private-sector employment opportunities that will be

unavailable to him because he now has an adverse disciplinary record with the Department.

123.     As a direct, foreseeable, and proximate result of DEFENDANTS' acts and omissions, OFFICER FORBUSH suffered and continues to suffer mental and emotional distress, humiliation, anxiety, embarrassment, and discomfort, to his damage, in an amount according to proof at the time of trial, and expenses incurred for treatment of same.

124.     In performing the acts herein alleged, DEFENDANTS acted intentionally to injure OFFICER FORBUSH, namely, to discipline him and adversely affect his employment, because of the content and viewpoint of his constitutionally protected speech on matters of public concern, which he engaged in while off duty, as a citizen.

125.     DEFENDANTS' conduct was oppressive, despicable and performed with a willful, conscious, and reckless disregard of OFFICER FORBUSH's civil rights such that punitive or exemplary damages are warranted.

**Fifth Claim for Relief**
**Retaliation Based on Exercise of Right to Free Speech and to Access to the Courts in Violation of 42**
**U.S.C. § 1983 ("Constructive Discharge")**
**(Against All Defendants)**

126.     OFFICER FORBUSH re-alleges and incorporates by reference as if fully set forth herein all preceding paragraphs of this Complaint.

127.     OFFICER FORBUSH engaged in constitutionally protected activity when he spoke as a private citizen on matters of public concern, on his personal social media account, in posting the Social Media Posts.

128.     OFFICER FORBUSH engaged in constitutionally protected activity when he filed a lawsuit in this case against the CITY and all DEFENDANTS, in April 2021.

129.     As a result of his constitutionally protected activity, OFFICER FORBUSH was subjected to adverse action by DEFENDANTS under color of state law that would chill a person of ordinary firmness from continuing to engage in that protected activity, when DEFENDANTS eliminated his position and constructively discharged him, as set forth herein.

130.     There was a substantial causal relationship between the constitutionally protected activity and the adverse actions taken against OFFICER FORBUSH by DEFENDANTS, because DEFENDANTS directly and expressly punished him for his constitutionally protected activity.

131.     DEFENDANTS developed and maintained policies and customs that violated OFFICER FORBUSH's constitutional rights.  DEFENDANTS ratified, endorsed, and abetted the retaliatory decisions and actions, and the basis for them. DEFENDANTS knew of, ratified, and failed to stop, the imposition of discipline against OFFICER FORBUSH for exercising his First Amendment rights to speak as a citizen on matters of public concern, and to petition in the Courts for redress of his grievances.

132.     As a direct result of OFFICER FORBUSH's exercising his constitutional right to speak publicly—on his own time, off-duty, as a citizen—publicly on matters of public concern, DEFENDANTS retaliated against him, taking adverse employment actions against him, as set forth herein, first by disciplining him for the content and/or viewpoint of his speech, and then by eliminating his position and constructively discharging him. Absent OFFICER FORBUSH's exercising his constitutionally protected rights to speak,

DEFENDANTS would not have taken the adverse employment actions against him set forth herein.

133.     At all times mentioned herein, OFFICER FORBUSH's constitutionally protected activities were related to matters of public concern, and were not undertaken pursuant to job duties. OFFICER FORBUSH's speech was on matters of widely-debated public concern.

134.     By taking adverse employment actions against OFFICER FORBUSH that were substantially motivated by his constitutionally protected speech, DEFENDANTS violated OFFICER FORBUSH's rights under the First Amendment to the United State Constitution.

135.     DEFENDANTS' official custom, pattern and practice of retaliating against police officers for the content and viewpoint of their off-duty, private-citizen speech on matters of public concern, has a continued chilling effect upon OFFICER FORBUSH's speech activities and those of many of his fellow officers. DEFENDANTS' adverse employment actions were intended to, did, and would reasonably chill and deter OFFICER FORBUSH, other officers, and other City employees from speaking publicly, on their own time, on matters of public concern, out of fear that if they expressed certain political views or opinions as citizens, they may be punished as City employees.

136.     As a direct result of DEFENDANTS' acts and omissions, OFFICER FORBUSH has suffered significant damages in an amount subject to proof at trial, including psychological and emotional harms; reputational harms; lost wages and lost pension income; and lost future income from post-retirement private-sector employment opportunities that will be unavailable to him because he now has an adverse disciplinary record with the Department.

137.     As a direct, foreseeable, and proximate result of DEFENDANTS' acts and omissions, OFFICER FORBUSH suffered and continues to suffer mental and emotional distress, humiliation, anxiety, embarrassment, and discomfort, to his damage, in an amount according to proof at the time of trial, and expenses incurred for treatment of same.

138.     In performing the acts herein alleged, DEFENDANTS acted intentionally to injure OFFICER FORBUSH, namely, to discipline him and adversely affect his employment, because of the content and viewpoint of his constitutionally protected speech on matters of public concern, which he engaged in while off duty, as a citizen.

139.     DEFENDANTS' conduct was oppressive, despicable and performed with a willful, conscious, and reckless disregard of OFFICER FORBUSH's civil rights such that punitive or exemplary damages are warranted.

### Sixth Claim for Relief
### Prior Restraint, in Violation of the First Amendment and 42 U.S.C. § 1983
### (Against Defendant CITY)

140.     OFFICER FORBUSH re-alleges every preceding and succeeding paragraph of this complaint as though fully set forth herein.

141.     Rule 2.040 imposes an unconstitutional prior restraint on OFFICER FORBUSH and every other public employee of the CITY.

142.     As set forth herein, the language of Rule 2.040, both on its face, and in the CITY's interpretation and application of it to OFFICER FORBUSH, is unconstitutionally vague, ambiguous, and overbroad.  It permits the CITY and its officials such as MARTINI, FALK, and KRUTZ, acting under color of state law, to punish employees, such as OFFICER FORBUSH, for statements they make off-duty, in their capacity as private citizens, speaking on matters of public concern, and which are the subject of widespread public discussion and debate—solely

because some CITY official, such as MARTINI, FALK, or KRUTZ, decides that someone *might* consider the private, off-duty statement to be "malicious, obscene, threatening, or intimidating."

143.     Worse, the rule has no clear definition for the terms "malicious, obscene, threatening, or intimidating," let alone one that is constitutionally compliant and that is noticed to employees.

144.     Worse still, the rule makes no distinction between speech that could reasonably be expected to disrupt the Department's operations, and speech that would not.

145.     A municipality's rule or policy on employee speech is an unconstitutional prior restraint if it restricts the municipality's employees' personal non-official speech as citizens on matters of public concern, and does so without an adequate justification.

146.     The prior restraint analysis "focus[es] on the chilling effect of the employer's policy on the employee's speech." *Barone v. City of Springfield, Oregon*, 902 F.3d 1091 (9th Cir. 2018).  Here, the language of Rule 2.040, and the CITY's use of Rule 2.040 to punish OFFICER FORBUSH for his personal off-duty speech as a citizen on matters of public concern and widespread public debate chilled and deterred OFFICER FORBUSH from engaging in constitutionally protected off-duty speech for the entirety of his remaining time in the employ of the Department, between the imposition of discipline on him in December 2020 through his constructive discharge in January 2022.

147.     The CITY also engaged in prior restraint against other Department officers and CITY employees, because they fear that the CITY will do to them what it did to OFFICER FORBUSH.  All CITY employees are thus required to

relinquish their First Amendment rights lest they face official punishment and discipline.

**Seventh Claim for Relief**
**Injunctive Relief**
**(Against Defendant CITY)**

148.     OFFICER FORBUSH re-alleges every preceding and succeeding paragraph of this complaint as though fully set forth herein.

149.     OFFICER FORBUSH engaged in constitutionally protected activity when he spoke as a private citizen on matters of public concern, on his personal social media accounts.

150.     As a result of his constitutionally protected activity, OFFICER FORBUSH was subjected to adverse action by Defendants under color of state law that would chill a person of ordinary firmness from continuing to engage in that protected activity, when Defendants charged him with misconduct and imposed official discipline on him.

151.     There was a substantial causal relationship between the constitutionally protected activity and the adverse action taken against OFFICER FORBUSH by Defendants, because Defendants directly and expressly punished him for his constitutionally protected activity.

152.     DEFENDANTS developed and maintained, and continue to maintain, policies and customs that violated OFFICER FORBUSH's constitutional rights. DEFENDANTS ratified, endorsed, and abetted the retaliatory decisions and actions, and the basis for them, set forth herein. DEFENDANTS knew of, ratified, and failed to stop, the imposition of discipline against OFFICER FORBUSH for exercising his First Amendment rights.

153.  As a direct result of OFFICER FORBUSH's exercising his constitutional right to speak publicly—on his own time, off-duty, as a citizen—publicly on

FIRST AMENDED COMPLAINT

matters of public concern, DEFENDANTS retaliated against him, including, inter alia, taking adverse employment actions against him, by disciplining him for the content and/or viewpoint of his speech. Absent OFFICER FORBUSH's exercising his constitutionally protected rights to speak, DEFENDANTS would not have taken the adverse employment actions against him set forth herein.

154.    At all times mentioned herein, OFFICER FORBUSH's constitutionally protected activities were related to matters of public concern, and were not undertaken pursuant to job duties. OFFICER FORBUSH's speech was on matters of widely-debated public concern.

155.    By taking adverse employment actions against OFFICER FORBUSH that were substantially motivated by his constitutionally protected speech, DEFENDANTS violated OFFICER FORBUSH's rights under the First Amendment to the United State Constitution.

156.    DEFENDANTS' official custom, pattern and practice of retaliating against police officers for the content and viewpoint of their off-duty, private-citizen speech on matters of public concern, has a continued chilling effect upon OFFICER FORBUSH's speech activities and those of many of his fellow officers. DEFENDANTS' adverse employment actions were intended to, did, and would reasonably chill and deter OFFICER FORBUSH, other officers, and other City employees from speaking publicly, on their own time, on matters of public concern, out of fear that if they expressed certain political views or opinions as citizens, they may be punished as City employees.

157.    As a direct result of DEFENDANTS' acts and omissions, OFFICER FORBUSH has suffered significant damages in an amount subject to proof at trial, including psychological and emotional harms; reputational harms; lost wages and pension income; and lost future income from post-retirement private-sector

employment opportunities that will be unavailable to him because he now has an adverse disciplinary record with the Department.

158.     As a direct, foreseeable and proximate result of DEFENDANTS' acts and omissions, OFFICER FORBUSH suffered and continues to suffer mental and emotional distress, humiliation, anxiety, embarrassment, and discomfort, to his damage, in an amount according to proof at the time of trial, and expenses incurred for treatment of same.

159.     In performing the acts herein alleged, DEFENDANTS acted intentionally to injure OFFICER FORBUSH, namely, to discipline him and adversely affect his employment, because of the content and viewpoint of his constitutionally protected speech on matters of public concern, which he engaged in while off duty, as a citizen.

160.     DEFENDANTS' actions are founded in and arise from deliberate policy positions and decisions that are ongoing and can only be fully remedied by injunctive relief in addition to damages.  Accordingly, OFFICER FORBUSH is entitled to, and hereby requests, that the Court enter an appropriate injunction requiring, inter alia, that the Department (1) purge OFFICER FORBUSH's personnel file of all disciplinary actions based on the unconstitutional punishment of protected speech as set forth herein; and (2) withdraw Rule 2.040 and all similar policies, and implement a policy governing officers' personal social media use that is consistent with the Constitution.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for Judgment against DEFENDANTS for:

1. Compensatory damages, economic and non-economic damages in excess of $1,000,000, in an amount according to proof;

FIRST AMENDED COMPLAINT

2. General damages to compensate OFFICER FORBUSH for mental and emotional injuries, distress, anxiety, and humiliation;

3. Attorneys' fees pursuant to 42 U.S.C. § 1988;

4. Exemplary or punitive damages as to individual DEFENDANTS KRUTZ, MARTINI, and FALK, in an amount according to proof that is sufficient to punish and prevent future violations of constitutional rights (namely, the deliberate retaliation against, punishment of, or constructive termination of, a public employee based on the employee's protected First Amendment speech as a private citizen on matters of public concern);

5. Injunctive relief as set forth herein;

6. Costs of suit;

7. Post-judgment interest;

8. Such additional relief as the Court may deem proper.

DATED:  April 20, 2022          Respectfully submitted,


CALEB E. MASON

/s/ *Mark Kilburn*
MARK KILBURN
Attorneys for Plaintiff
GEORGE FORBUSH


## DEMAND FOR JURY TRIAL

OFFICER FORBUSH demands a jury trial.

37

FIRST AMENDED COMPLAINT

DATED:  April 20, 2022          Respectfully submitted,

CALEB E. MASON

/s/ **Mark Kilburn**

MARK KILBURN
Attorneys for Plaintiff
GEORGE FORBUSH

FIRST AMENDED COMPLAINT